IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADISON CLEMENTS, individually and on behalf of a class of persons similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:18-cv-00660 ) ) |
| v. | ) Hon. Sara L. Ellis ) United States District Judge ) |
| JPMORGAN CHASE BANK, N.A., | ) Hon. Jeffrey T. Gilbert ) United States Magistrate Judge ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY FURTHER
PROCEEDINGS AND COMPEL ARBITRATION**

October 1, 2018

Paul J. Ferak (ARDC No. 6272208)
Michael R. Cedillos (ARDC No. 6296052)
Alexandra J. Block (ARDC No. 6312371)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
*Attorneys for JPMorgan Chase Bank, N.A.*

Plaintiff does not dispute, and therefore concedes, that on February 24, 2016 she knowingly and willingly applied for her Chase deposit account, signed her name on the signature card "applying to [the Bank] to open the deposit account," specifically "acknowledge[d] receipt of the Bank's Deposit Account Agreement...which includes all provisions that apply to this deposit account," and "agreed to be bound by the terms and conditions contained therein as amended from time to time." (Dkt. 12-1 Ex. A.) Plaintiff's counsel admitted: "**She signed it on February 24th, 2016**." (Dkt. 33 (6/19/18 Tr.) at 24:18 (emphasis added)). Plaintiff agrees that she remained a Chase deposit account holder for nearly two years after applying for her Chase account in person and agreeing in writing to be bound by the Deposit Account Agreement ("DAA"). She admits in her Complaint that she reviewed her bank statements (Dkt. 1 ¶ 20), which indisputably referenced her governing DAA, including on the very first bank statement received after opening her account. (Ex. 1.)

Plaintiff's Opposition ignores these important facts and well-settled law that "a party to an agreement is charged with knowledge of and assent to the agreement signed," *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 150 (2006); that mere denial of receipt, without more, is insufficient to avoid arbitration, *Friends for Health v. PayPal, Inc.*, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018); and that no party to a signed agreement can defend against its enforcement by claiming to have signed it without reading or understanding its terms. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Plaintiff ignores that signing her signature, she agreed to be bound. Plaintiff's principal arguments are "non-starters" because it is insufficient to claim "[s]he did not get a copy of the contract, [s]he never read it, [s]he could not read it if [s]he tried, and [s]he did not know what [s]he agreed to." *Id.* "[N]one of these arguments refutes the basic point that [plaintiff] signed an agreement with [defendant]…and that

the parties performed under the agreement." *Id.* Equally meritless are Plaintiff's remaining conclusory and undeveloped arguments of illusoriness, unconscionability, lack of consideration, and/or failure to read. Each ignores both the contract she signed and controlling law.[1]

    **I.**    **Plaintiff More Than Fully Manifested Her Intent to Be Bound by the DAA When She Opened Her Account and After, and She Has Utterly Failed to Come Forward with Any Evidence to Set Aside Her Agreement to Be Bound**

For a motion to compel arbitration, under Illinois law, "whether parties have entered into a contract depends on whether they have sufficiently manifested their intent to be bound by its terms." *Winters v. AT&T Mobility*, 2017 WL 2936800, at *2 (C.D. Ill. July 10, 2017). "The inquiry into intent is objective, concerned not with what the parties privately may have thought or known, but with what may fairly be ascribed to them on the basis of their words and actions." *Id.* "[I]t is not necessary that the parties share the same subjective understanding as to the terms of the contract." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 313 (1987). Given the importance of holding parties to the contracts they sign, it is also well settled in Illinois and across the country that "[a] person who signs a contract is presumed to know its contents and assent to them." *Gruber v. Louis Hornick & Co.*, 2003 WL 21222541, at *2 (S.D.N.Y. May 23, 2003); *Melena*, 219 Ill. 2d at 150 (same). "A person is bound by a contract he or she signs, and is deemed to have read the contract." *Delaura v. Lennar Homes, Inc.*, 2009 WL 2181251, at *4 (M.D. Fla. July 22, 2009) ("The Agreement signed by plaintiffs … states that plaintiffs received all required…documents. While the Complaint states that they did not, plaintiffs are bound by the contracts they sign.").

Here, there is no question that Plaintiff manifested her assent to be bound by the DAA when she applied to open her checking account on February 24, 2016, acknowledged receipt of

---

[1] Plaintiff does not dispute, and therefore concedes, that her claims fall within the scope of the arbitration clause.

the DAA, and agreed to bound by the terms and conditions contained therein as amended from time to time. (*See* Dkt. 33 (6/19/18 Tr.) at 3:15, 24:18 ("She signed it on February 24th, 2016."); Dkt. 36-1 (M. Clements Decl.); Dkt. 12-1 at Ex. A. Plaintiff similarly continued manifesting her intent to be bound by continuing to use her Chase account. (*See, e.g.*, Dkt. 12-2 at p. 9 ("This Deposit Account Agreement is the contract that governs your account....By signing a signature card or application, or using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms contained in this agreement.")).

Courts around the country have enforced the same or substantially similar Chase arbitration agreements as the one before this Court, including in the past two weeks. *See, e.g.*, *Johnson v. JPMorgan Chase Bank, N.A.*, 2018 U.S. Dist. LEXIS 167272, *7-24 (C.D. Cal. Sept. 18, 2018) (holding that three separate individual Chase customers bound themselves to the DAA's valid arbitration agreement based on each of them signing the Chase signature card that referenced the DAA, as Plaintiff admits to doing here); *Tinsley v. JPMorgan Chase Bank, N.A.*, 2014 N.Y. Misc. LEXIS 4728, at *2-3 (ordering arbitration pursuant to the DAA where the Chase customer signed a signature card); *Scott v. JPMorgan Chase & Co.*, 2014 WL 338753, at *10-11 (S.D.N.Y. Jan. 30, 2014) (ordering arbitration pursuant to the DAA where the Chase customer signed a signature card), *aff'd.* 603 Fed. Appx. 33 (2d Cir. 2015); *Sanchez v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 4063046, at *4-5 (S.D. Fla. Aug. 15, 2014) (ordering individual arbitration under the DAA where the Chasse customer signed a signature card).

Plaintiff fails to cite a single fact showing any special circumstances, such as fraud or duress, which would justify non-enforcement of the contract. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011). Plaintiff's conclusory and/or uncorroborated claims of "not receiving a copy of the [DAA]" or "never intending to enter into an agreement

3

with Chase" (Dkt. 36-1 ¶¶ 5, 8) ignore what Plaintiff signed and are insufficient to justify non-enforcement of her contract with Chase. Her signature also confirms receipt of a copy of the DAA. *Gruber*, 2003 WL 21222541, at *2. "A person is bound by a contract he or she signs, and is deemed to have read the contract." *Delaura*, 2009 WL 2181251, at *4 ("The Agreement signed by plaintiffs…states that plaintiffs received all required…documents. While the Complaint states that they did not, plaintiffs are bound by the contracts they sign."). Even if Plaintiff did not read what she signed or the DAA, Plaintiff is bound:

> Failure to read a document before signing it is normally no excuse for a party who signs it. A party who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead a lack of understanding or that the contract misled him…. [The Illinois Supreme Court] rejected an argument that an elderly lady in poor health was incapable of understanding a trust agreement several pages long and couched in precise and formal legal terms…. '[i]f such a contention had merit very few modern legal instruments could withstand attacks of the kind made in this case.'

*State Bank v. Sorenson*, 167 Ill. App. 3d 674, 682 (2d Dist. 1988). This same reasoning applies. That is, although Plaintiff now claims that she chose not to read what she signed, which allegedly she understood as being "used to compare my signature to other documents that I might present to the bank" (Dkt. 36-1 ¶ 4), it is well settled in Illinois that:

> One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement… And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived ….

*Leon v. Max E. Miller & Son, Inc.*, 23 Ill. App. 3d 694, 699-700 (1st Dist. 1974); *Nilsson v. NBD Bank*, 313 Ill. App. 3d 751, 762-63 (1st Dist. 1999) (same); *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 117 (1st Dist. 2010) (party has a duty to read documents before signing, and failure to do so will not invalidate them despite plaintiff's "assert[ion] she was told by one of defendant's employees that the form was for authorization of payment of her membership dues

… and she did not know she was signing a release [of liability]"); *All Am. Roofing v. Zurich Am. Ins.*, 404 Ill. App. 3d 438, 448 (1st Dist. 2010) (sophisticated or not, parties have a duty to learn or know the contents of contracts before signing).

Illinois applies these same settled principles to arbitration. In *Melena,* 219 Ill. 2d at 139-40, 152-53, the Illinois Supreme Court enforced an arbitration agreement where plaintiff signed a short acknowledgement that she was bound by an employee handbook, even though the acknowledgment did not state the handbook had an arbitration provision, because, *inter alia*, "<u>a party to an agreement is charged with knowledge of and assent to the agreement signed</u>." *Id.* at 150. The Seventh Circuit agrees. *Janiga*, 615 F.3d at 742-43 (compelling arbitration even though plaintiff claimed "he did not get a copy of the contract, he never read it, he could not read it if he tried, and he did not know what he agreed to"); *Williams v. TCF Nat'l Bank*, 2013 WL 708123, at *3 (N.D. Ill. Feb. 26, 2013) (upholding bank arbitration clause; "[i]n Illinois…a party to a contract for consumer goods and services is bound by the contract's terms, even if unread").

Plaintiff's argument that she assumed **no** contract would govern her bank relationship (Dkt. 36-1 ¶ 4) is meritless (and unreasonable). It remains undisputed that Plaintiff signed her name and had the chance to read both what she signed and the DAA, even though she now claims she chose not to. (Dkt. 33 (6/19/18 Tr.) at 3:15, 24:18 ("She signed it on February 24th, 2016."); Dkt. 36-1 (M. Clements Decl.) (not denying she signed it); Dkt. 12-1 Ex. A). It is undisputed that it was Chase's policy and procedure to provide the DAA to all customers opening accounts, confirm that the customer wanted to open the account before signing, and obtain the signature before opening the account—as well as provide a copy of the DAA, among other disclosures. (Ex. 2 (S. Appiah Decl.) ¶¶ 3-13). That was done for Plaintiff. (*Id.* ¶¶ 6-15). *O'Quinn v. Comcast Corp.*, 2010 WL 4932665, at *4 (N.D. Ill. Nov. 29, 2010) (evidence of

5

pattern and practice demonstrated receipt notwithstanding plaintiff's uncorroborated denial).

Plaintiff was indisputably informed that the DAA governed her account on her signature card, in the DAA, and on the very first page of her very first bank statement, among other places. (Ex. 1; Dkt. 12-1 Ex. A.) Plaintiff's first statement told her about a transfer fee and stated: "Your relationship is important to us and we are committed to keeping you informed….**All other terms and conditions of your Deposit Account Agreement still apply. If you have any questions, please call the number listed at the top of this statement.**" (Ex. 1 at JPMC/CLEMENTS 001073 (emphasis added)). Plaintiff's March 2016 statement was mailed to her no later than March 30, 2016. (Ex. 3 (M. Sampath Decl.) ¶¶ 7-8). Chase makes account statements available to customers online (*id.* at ¶ 10), and Plaintiff herself admits that she received her statements and read them. (Compl. ¶ 20). Receipt of her first bank statement referencing the DAA (available in branches, online, and via Plaintiff's mobile app) left Plaintiff with nearly a month in which to read the DAA and opt out of arbitration (60 days from 2/24/16 was 4/24/16).[2]

On this record, with Plaintiff's own signature forming the contract, plus the other unrefuted proof of her assent, Plaintiff's conclusory contention that a trial is needed is meritless, as no requisite factual issue exists. "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement." *Tinder v. Pinkerton Sec.*, 305 F.3d. 728, 735 (7th Cir. 2002). Plaintiff does not meet this burden. She and her attorneys admit she signed the contract agreeing to be bound and acknowledging receipt of the DAA: "**She signed it on February 24th, 2016**." (Dkt. 33 (6/19/18 Tr.) at 24:18.) Moreover, under the facts, merely denying receipt of a DAA now, as she does, without more, is insufficient. Her assertion that she did not receive a DAA (which is contrary to her own signed, binding contract) is Plaintiff's sole

---

[2] Plaintiff—like all bank customers—had a legal obligation to review her statements. "It is common knowledge that account holders should review monthly bank statements." *Aliaga Med. Ctr. v. Harris Bank, N.A.*, 2014 IL App. (1st) 133645-U, ¶¶ 26-29. They are legally binding—read or unread. *Id.*

6

defense and "does not raise a genuine issue of material fact" sufficient to avoid arbitration under the circumstances of this case. *Tinder*, 305 F.3d. at 736; *Friends for Health*, 2018 WL 2933608, at *5 (plaintiff's declaration that she did not receive PayPal's contract and her rabbi's declaration he received a later PayPal notification which she did not were insufficient to overcome the presumption created by PayPal's declarations explaining its policies and procedures); *O'Quinn*, 2010 WL 4932665, at *3 ("[Plaintiff's] denial is not enough to overcome the presumption that Comcast's service technician provided [plaintiff] with the Customer Agreement," created by "the declaration of…a Comcast employee [averring] that Comcast's routine practice is to provide customers with the Customer Agreement at the time services are installed"). Here, in addition to Chase's other evidence of assent, Plaintiff signed her contract and agreement to be bound.

Here, unlike the usual case where arbitration is contested, this Plaintiff admits to signing the contract, which also confirmed receipt of the DAA by her own signature. In addition, Chase presented additional evidence confirming Plaintiff signed the acknowledgement of receipt of the DAA and her assent to be bound by continuing to use the account. (Dkt. 12-1 at Ex. A.) Plaintiff's conclusory denial of receipt of the DAA is wholly insufficient to warrant a trial based on this and other record evidence regarding Plaintiff's account opening. *Delaura*, 2009 WL 2181251, at *4 ("The Agreement signed by plaintiffs … states that plaintiffs received all required…documents. While the Complaint states that they did not, plaintiffs are bound by the contracts they sign."); *McCarthy v. Option One*, 362 F.3d 1008, 1011-1012 (7th Cir. 2004) (rejecting plaintiff's claim "that he was not given a Consumer Handbook" where plaintiff "signed acknowledgments of receipt" because, *inter alia*, "evidence of regular office procedures and customary practices of a sender gives rise to a presumption of delivery and this Court has rejected the notion that this type of evidence may be rebutted by a mere denial of receipt");

*Keiran v. Home Capital, Inc.*, 858 F.3d 1127, 1132 (8th Cir. 2017) (rejecting that plaintiff's "conclusory, self-serving" affidavit of non-receipt could overcome presumption created by signed document acknowledging receipt).[3]

### II. The Deposit Account Agreement Is Properly Incorporated By Name; Plaintiff's Ambiguity Argument Is Meritless and Ignores the Plain Language

"A contract must be construed as a whole, viewing each provision in light of the other provisions." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). The contract's meaning "is not determined by viewing a clause or provision in isolation." *Id.*[4] Documents can be incorporated by reference. The contract need only "show an intent to incorporate the other document and make it part of the contract." *Golen v. Chamberlain*, 139 Ill. App. 3d 53, 59 (1st Dist. 1985).

Plaintiff ignores these well settled rules. The signature card expressly states that Plaintiff is applying for a deposit account with Chase and confirms that by opening the account, Plaintiff agrees to be bound by the DAA. (Dkt. 12-1 at Ex. A). There is nothing ambiguous about that. Indeed, in concocting her "ambiguity argument" Plaintiff conspicuously omits the very first sentence of the ACKNOWLEDGMENT, which specifically states: "By signing this signature card, I am applying to the JPMorgan Chase Bank, N.A. (the Bank) ***to open the deposit account and/or Chase Liquid indicated above***." (Dkt. 12-1 at Ex. A (emphasis added.)) There is only one account "indicated above": Plaintiff's "Chase College Checking" account, the only account she

---

[3] Plaintiff must not have read her declaration. She swears she was a student at "the University of Chicago at Illinois." There is no such school. Her Complaint incorrectly claimed she opened her account at a predecessor bank. That was wrong. The events she describes—a Chase signature card with Stacey Appiah's name, but suggesting someone else opened the account—are not possible events. (Ex. 4 (K. DesRoches Decl.). Nothing overcomes Plaintiff's signed acknowledgment and agreement to be bound, or her being charged with knowledge and presumption of receipt, in any event.

[4] Plaintiff's arguments misstate the law. A contract "is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof…to ascertain what the parties have agreed to do." *Midland Hotel Corp.*, 118 Ill. 2d at 314. Here, once the initial phrase of the contract is considered (and not misleadingly omitted as Plaintiff tries to do), the contract meaning and what Plaintiff agreed upon and acknowledged is clear: her assent to the DAA.

opened. (*Id.*) *Only after this sentence* does the signature card continue: "I acknowledge receipt of the Bank's Deposit Account Agreement or other applicable account agreement or the Chase Liquid Agreement, which includes all provisions that apply to this deposit account and/or Chase Liquid Card and the Bank Privacy Policy, and agree to be bound by the terms and conditions contained therein as amended from time to time." (*Id.*) As such, it is clear (a) what kind of account is being opened (a checking account), and (b) which agreements apply to it (the DAA). Plaintiff agrees her account is a deposit account, to which the "Deposit Account Agreement" applies.[5] The Privacy Policy is included with the DAA. (*See* Dkt. 12-2 Exs. A-G).

Plaintiff's claim that the arbitration provision in the DAA was not properly incorporated because the arbitration provision is not referenced on the signature card and acknowledgement that she signed is meritless. Any such special requirement would violate the Federal Arbitration Act. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Courts may not…invalidate arbitration agreements under state laws applicable *only* to arbitration."); *Epic Sys. v. Lewis*, 138 S. Ct. 1612, 1622-23 (2018). Indeed, the terms of an expressly incorporated contract are not required to be identified individually; the contract's name is enough. This is confirmed by *Melena*: the Illinois Supreme Court enforced arbitration where plaintiff signed a short acknowledgement being bound by the employee handbook, even though the acknowledgment did not state the handbook had an arbitration provision. *Melena,* 219 Ill. 2d at 139-140, 152-53.[6]

---

[5] Each of the cases cited by Plaintiff to support her ambiguity argument is inapposite. None of them deals with arbitration clauses. Also, there is no need to "authenticate" documents (Opp'n 8) because there is no issue: Plaintiff and Plaintiff's counsel agree that Plaintiff signed the signature card. *Supra* at p. 5.

[6] Based on *Melena*, Plaintiff is clearly wrong to contend that "an arbitration clause [is] successfully incorporated by reference" only where "the incorporating document in question specifically identified the incorporated document containing the arbitration clause and informed the reader of the potential for arbitration" (Opp'n at p. 9). *Warren v. Meijer*, 2017 WL 3087724, at *1 (N.D. Ill. July 20, 2017), is also distinguishable. There, the court found that a clause not identifying a single document by name but instead referring generally to what could have been 146 different "policies, procedures, work rules and

Plaintiff's general arguments regarding "other applicable" agreements are red herrings. The DAA is the agreement at issue and is clearly and indisputably incorporated by reference to its exact name, in its entirety. The "other agreements" Plaintiff signed on the same day she opened her account, would include, among other things, the overdraft fee or direct deposit agreements Plaintiff also signed (*See* Ex. 5). These documents undoubtedly apply to Plaintiff's account and are likewise binding on her, though they are not the basis of Chase's motion.

### III. Clements' Unconscionability Arguments Also Fail

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it…. Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." *Razor v. Hyundai Motor*, 222 Ill. 2d 75, 100 (2006). Plaintiff fails to prove either.

Plaintiff fails to establish procedural unconscionability. Plaintiff agreed in writing to the DAA, also confirming receipt. (Dkt. 33 (6/19/18 Tr.) at 3:15, 24:18 ("She signed it on February 24th, 2016."); Dkt. 36-1; Dkt. 12-1 Ex. A; *Melena,* 219 Ill. 2d at 139-140, 152-53 (compelling arbitration based on plaintiff's signed acknowledgment); *O'Quinn*, 2010 WL 4932665, at *4 (arbitration clause not procedurally unconscionable even though the customer agreement did not begin until page 10 of 39 and the arbitration clause did not begin until page 21); *Tortoriello v. Gerald Nissan*, 882 N.E.2d 157, 175-76 (2008) (no procedural unconscionability where class waiver was in bold and all caps); *Bunge Corp. v. Williams,* 45 Ill. App. 3d 359, 364-65 (5th Dist. 1977) (arbitration clause not unconscionable when printed on the back of the contract); *supra* p. 3 (cases enforcing arbitration based on Chase's signature card and incorporated DAA).

Here, the DAA's arbitration clause is properly under "Other Legal Terms" of the

---

guidelines" raised an issue of fact about what was incorporated. Here, Plaintiff's signed agreement identified the DAA by name. *Hartford Fire Ins. v. Henry Bros.*, 2011 WL 3563138, at *2 (N.D. Ill. Aug. 10, 2011); *supra* at p. 3 (cases enforcing Chase signature card). Plaintiff's remaining cases are inapposite.

10

"General Account Terms," both of which are identified on the Table of Contents. (Dkt. 12-2 at p. 8). The arbitration terms are prominently identified in visibly striking blue type: "12. Arbitration." That section contains prominent headings and additional blue subheadings, such as "What claims or disputes are subject to arbitration?" "Can I (the customer) cancel or opt out of this agreement to arbitrate?" and "What about class actions or representative actions?" (*Id.* at pp. 25-26). The portions identifying the right to opt out and the parties' agreement to proceed on an individual basis are in all caps, under clear headings. (*Id.*) The scope of claims covered is also identified clearly, again blue: "*What claims or disputes are subject to arbitration?*" (*Id.* at p. 25.)

Plaintiff's arguments regarding substantive unconscionability are similarly groundless. Plaintiff's entire argument regarding class waivers and *Kinkel* is based on pre-*Concepcion* overturned law. Courts agree *Kinkel* is no longer good law:[7]

> While the Illinois Supreme Court may have found such [class] waivers unconscionable and unenforceable …, *see Kinkel v. Cingular Wireless, LLC*, 857 N.E. 2d 250, 275-76 (Ill. 2006), the United States Supreme Court disagrees …. *AT&T Mobility* held that the rule…that waivers of the right to classwide arbitration proceedings were unconscionable in contracts of adhesion where each individual has a small amount of damages and inferior bargaining power—is inconsistent with the FAA's purpose of promoting arbitration and is therefore preempted….*American Express* held that there is no exception…. <u>AT&T Mobility</u> means that the Illinois' *Kinkel* rule is preempted by the FAA…and <u>American Express</u> means that this holds true regardless of the fact that the amount of damages [plaintiff] can recover pales in comparison to the cost of individual dispute resolution.

*Lewis v. Advance Am. Cash Advance Ctrs*, 2014 WL 47125, at *3 (S.D. Ill. Jan. 6, 2014). The Supreme Court confirmed this again just recently: *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1622-23 (2018) (affirming class waiver) ("This is where the employees' argument stumbles…. [B]y attacking (only) the individualized nature of the arbitration proceedings, the employees' argument [improperly] seeks to interfere with one of arbitration's fundamental attributes.").

---

[7] *Kinkel*'s arbitration provision was not held unconscionable. *Kinkel* ordered plaintiff to arbitrate after severing the class waiver using reasoning that is no longer good law. *Kinkel*, 857 N.E. 2d at 263, 277-78.

11

Plaintiff's remaining perfunctory arguments are easily dismissed. The mere fact that there is an arbitration clause, or that the DAA is not negotiated, does not make it unconscionable. *Melena,* 219 Ill. 2d at 150-53. Second, the DAA makes clear that Chase does *not* solely control which disputes go to arbitration. Plaintiff was initially given the upper hand—she had 60 days to opt out. (Dkt. 12-2 at p. 25). After Plaintiff declined to opt out, the parties' arbitration rights were equal: either could choose arbitration, including which forum (JAMS or AAA). (*Id.*).[8]

Plaintiff's perfunctory arguments also distort the DAA's plain language and ignore the law. The "Adverse Claims" section and Chase's ability to "unilaterally" seek court action (Opp'n 12) concern interpleading funds due to competing claims, not arbitration. (Dkt. 12-2 at p. 23). The "Indirect, Special or Consequential Damages" section (Opp'n 12-13) addresses stop payments and following a customer's transaction instructions. ("Rules governing your account" at Dkt. 12-2 at pp. 23-24). The interest limitation (Opp'n 13) simply provides that any pre-judgment interest against Chase will accrue at the rate the money would have earned if it had been in the customer's Chase account. (Dkt. 12-2 at p. 25). Plaintiff's selective reference to Chase's "unilateral right to amend" (Opp'n 13) is particularly egregious. Plaintiff deliberately omits that under the DAA, Chase agrees to give 30 days' advance notice of any changes, and that only "[b]y maintaining your account after the effective date of any change, you agree to the change." (Dkt. 12-2 at p. 23). That's normal, not invalid or oppressive.

Plaintiff also ignores the fee/cost provisions in the arbitration clause. The DAA confirms that Chase will pay up to $500 of Plaintiff's arbitration fees, plus fees for two days of hearings. (Dkt. 12-2 at p. 26). Chase will consider Plaintiff's request to pay more in good faith. (*Id.*) Plaintiff deliberately fails to mention what it would cost to arbitrate—likely because both AAA and JAMS provide that Plaintiff's filing fee is a non-refundable $200 or $250 (for which Chase

---

[8] Strict equality is not necessary for the clause to be enforceable. *Tortoriello*, 379 Ill. App. 3d at 237.

must reimburse her under the DAA), and Chase pays the other fees/costs. (Ex. 6 (*AAA Consumer Arbitration Rules*, at 1 (available at https://www.adr.org/sites/default/files/Consumer_Fee_Schedule.pdf)); Ex. 7 (*JAMS Policy on Consumer Arbitrations*, at p.3, ¶ 7 (available at https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Consumer_Min_Stds-2009.pdf)).[9] It would have been *less* expensive if Plaintiff filed her claims in arbitration. The claims also likely would have been resolved by now—if in JAMS, likely by one of the former judges from this District. Plaintiff's arguments are baseless.

### IV. Clements' Assertion that the Deposit Agreement Is Illusory and Lacks Consideration Is Also Baseless

Consideration is anything that someone was not already legally obligated to do. *Wickstrom v. Vern E. Alden Co.*, 99 Ill. App. 2d 254, 258-62 (1st Dist. 1968). Before Plaintiff signed her signature card and agreed to be bound by the DAA, Chase was not obligated to provide her banking services, and she was not obligated to adhere to the DAA. Chase provided sufficient consideration by agreeing to provide banking services, and Plaintiff provided consideration by agreeing to be bound by the DAA. Nothing more is needed. *Williams*, 2013 WL 708123, at *10 (consideration for arbitration because plaintiff could close her account any time and "any modification is supported by valid consideration: the extension of banking services on the new, modified terms by TCF, which was [TCF] was not previously obligated to perform").

Insofar as Plaintiff is attacking *only* the arbitration provision as being unsupported by consideration (which the U.S. Supreme Court holds is improper – *see* Part II, *supra*), that argument fails. Plaintiff's cite to *Vassilkovska v. Woodfield Nissan, Inc.* (cited at Opp'n 14), does not support her position. Unlike here, in *Vassilkovska*, the arbitration agreement was in a completely separate "contract in its own right" and therefore was separately "reviewed to ensure

---

[9] Judicial notice of these is proper. *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 490 (7th Cir. 2018).

that it contains the elements necessary for the formation of a contract." 358 Ill. App. 3d 20, 25 (1st Dist. 2005). By contrast, the arbitration term here was in the DAA to which Plaintiff agreed, no different than any other terms of that same contract. What's more, in *Vassilkovska* (again, unlike here), the defendant "[could not] point to its own promise to arbitrate … to make enforceable the plaintiff's promise to do likewise." *Id.* at 27. That was also the issue in *Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F. 3d 776, 783 (7th Cir. 2014): The arbitration agreement there required plaintiff to arbitrate at the defendant's election, but not vice versa. Here, if Plaintiff does not opt out, both parties may elect arbitration. (Dkt. 12-2 at p. 25). Therefore, there is mutual consideration for the arbitration provision, too, and the provision is not illusory. *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985) ("If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate.").

Also meritless is Plaintiff's claim that the DAA is unsupported by consideration and therefore illusory because "Chase can change any of its terms whenever it so desires." (Opp'n 14). The ability to amend a contract does not make it illusory. A contract is illusory only when it really doesn't bind one of the parties at all. *See, e.g.*, *States Self-Insurers Risk Retention Grp., Inc. v. Waukegan*, 2018 WL 1378346, at *7 (N.D. Ill. Mar. 16, 2018). That is not the case here. The DAA states that Chase will give 30 days' notice before any changes go into effect, and Plaintiff can close her account at any time. (Dkt. 12-2 at p. 22 ("H. Closing Your Account"), p. 23 ("5. Changes to the agreement"). Both parties gave new consideration each time the DAA was modified: Chase continued providing services, and Plaintiff continued being bound to the DAA by not closing her account. *See, e.g.*, *Williams*, 2013 WL 708123, at *10.

14

Finally, the Illinois Supreme Court already has rejected Plaintiff's claim that differences in bargaining power can invalidate the DAA. *Melena,* 219 Ill. 2d at 152-53 (rejecting "the appellate court's implication that plaintiff's acceptance of the dispute resolution provisions…was illusory [because] Anheuser-Busch gave her little choice in the matter"; "inequality in bargaining power alone [is insufficient] to invalidate an otherwise enforceable agreement"). Plaintiff's unsupportable "illusoriness" argument is itself "illusory."

### V. Plaintiff's Position That She Chose Not to Read Is No Defense

Plaintiff's final argument – that she should not be bound by the DAA because she chose not to read it – is a mere rehashing of her earlier rejected arguments, and it fails for all the same reasons. It is a neither a defense nor an excuse if Plaintiff chose not to read the document she signed. *Melena*, 219 Ill. 2d at 151-53. The Seventh Circuit agrees. *Janiga*, 615 F.3d at 742-43 (compelling arbitration under Illinois law even though plaintiff claimed "he did not get a copy of the contract, he never read it, he could not read it if he tried, and he did not know what he agreed to" because "none of these arguments refutes the basic point that [plaintiff] signed an agreement with [defendant] . . . and that the parties performed under the agreement"). Plaintiff is bound to what she signed. Moreover, under the circumstances, her continued use of the account for years further confirms her assent to the DAA.

### **CONCLUSION**

For all of the foregoing reasons, Chase respectfully requests that the Court enter an order granting Chase's motion and compelling Plaintiff to arbitrate her claims on an individual basis.

Dated: October 1, 2018          Respectfully submitted,

*/s/ Paul J. Ferak*
Paul J. Ferak (ARDC No. 6272208)
Michael R. Cedillos (ARDC No. 6296052)
Alexandra J. Block (ARDC No. 6312371)
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400

*Attorneys for JPMorgan Chase Bank, N.A.*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on October 1, 2018, a true copy of the foregoing was served by this Court's ECF system on all counsel of record.

                                      */s/ Paul J. Ferak*
                                      Paul J. Ferak